# 24-2564-cv

## United States Court of Appeals

### *for the*

## Second Circuit

JULIO LICINIO, MD, PHD, MBA, MS,

*Plaintiff-Appellant,*

– v. –

STATE OF NEW YORK, STATE UNIVERSITY OF NEW YORK,
STATE UNIVERSITY OF NEW YORK UPSTATE MEDICAL UNIVERSITY,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

DANIEL GRACE
DANNY GRACE PLLC
*Attorneys for Plaintiff-Appellant*
225 Broadway, Suite 1200
New York, New York 10007
(212) 202-2485

CP COUNSEL PRESS   (800) 4-APPEAL • (379169)

# **Table of Contents**

Table of Authorities ........................................................................... i

PRELIMINARY STATEMENT ..........................................................1

ARGUMENT ....................................................................................1

I.    APPELLANT MADE OUT A PRIMA FACIE CASE OF RETALIATION – PROTECTED ACTIVITIES..................................................................................1

  A.    The Reasonableness of Appellant's Belief ................................................2

  B.    Appellee Could Reasonably Have Understood That the Appellant's Opposition was Directed at Conduct Prohibited by Title VII ...........................6

II.    The District Court Erred in Finding That There was a Legitimate Basis for Appellant's Demotion................................................................8

III.    The District Court Erred in Finding that Appellant's Demotion Was Not Pretextual ..............................................................................10

IV.    Legal Standard on Motion for Summary Judgment ................................14

CONCLUSION ................................................................................15

# **Table of Authorities**

## **Cases**

Bostock v. Clayton Cnty., Georgia,
   590 U.S. 644, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020).....................13

Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,
   136 F.3d 276 (2d Cir.1998) ................................................................2, 4

Grant v. Hazelett Strip-Casting Corp.,
   880 F.2d 1564, 1569 (2d Cir.1989) .........................................................8

Manoharan v. Columbia University College of Physicians & Surgeons,
   842 F.2d 590 (2d Cir. 1989) ....................................................................2

Reed v. A.W. Lawrence & Co.,
   95 F.3d 1170 (2d Cir. 2013) ....................................................................2

Summa v. Hofstra Univ.,
   708 F.3d 115 (2d Cir. 2013) ....................................................................4

Sumner v. U.S. Postal Serv.,
   899 F.2d 203(2d Cir.1990). ......................................................................8

Vogel v CA, Inc.,
   662 Fed Appx 72 (2d Cir 2016)..............................................................15

## **Statutes**

Fed. R. Civ. P. 56(c)..................................................................................14

Title VII of the Civil Rights Act of 1964, as amended, §704(a). ("Title VII").........7

**PRELIMINARY STATEMENT**

Appellant submits this reply brief in support of his principal brief regarding the District Court's error in granting Defendants-Appellees' motion for summary judgment, dismissing Appellant's complaint. This Court should find that the Appellant engaged in protected activities. Further, this Court should find that Appellees did not have a legitimate, non-retaliatory basis for Appellant's demotion, their proffered reason was pre-textual that Appellant's continuous efforts to address the discriminatory policies and practices of Appellee was a but-for cause of his demotion. The District Court erred in its finding that a triable fact did not exist in this matter, and that there was no reasonable jury that could find in favor of Appellant at trial.

**ARGUMENT**

## I.  APPELLANT MADE OUT A PRIMA FACIE CASE OF RETALIATION – PROTECTED ACTIVITIES

In his Complaint, Appellant enumerates multiple protected activities that he engaged in, in response to Appellees' discriminatory policies and practices. (A-0001-0054). The District Court held with respect to all of Appellant's efforts to address institutional discrimination at SUNY Upstate that they did not rise to the level of a protected activity. (SA-60-76).

1

With regard to "participation in protected activity, the plaintiff need not establish that the conduct she opposed was actually a violation of [Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq. ("Title VII") ], but only that she possessed a 'good faith, reasonable belief that the underlying employment practice was unlawful' under that statute. Id. (internal quotation marks omitted); *see also*, *Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d at 593*. The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances. *Reed v. A.W. Lawrence & Co., 95 F.3d at 1178*. As to the second element, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir.1998).

## A. The Reasonableness of Appellant's Belief

As Dean, one of Appellant's primary tasks was to gain accreditation for the school from the LCME, the accreditation authority for medical education programs in the United States. (A-0823, 0826).

In fact, SUNY Upstate had been on probation after 2011 due to the LCME's determination that ongoing monitoring was required at SUNY Upstate in order to ensure compliance with diversity standards. (A-0824, 0826).

2

In short, Appellant stepped into a situation where Appellee's failure to comply with diversity standards could in and of itself be seen as discriminatory.

In this context, and for the duration of his time as Dean, Appellant complained of SUNY Upstate's discriminatory policies and practices (A-0751); and (A-1140).

Appellant submits that not only does each of the enumerated actions taken by Appellant constitute a protected activity for the reasons set forth in Appellant's principal brief, but the protracted efforts of Appellant, over the course of his more than two years as Dean, when viewed as a whole, constitute a continuing protected activity. Implicit in all of Appellant's efforts to promote diversity at SUNY Upstate is that Appellant was addressing institutional discrimination. (A-0825).

In fact, with respect to the salary reduction of Dr. Ma-Li Wong, Appellant told Dr. Dewan directly that Appellant believed Dr. Wong's salary reduction was discriminatory:

> Q. During that meeting with Dr. Dewan on August 12, 2019, you indicated in your complaint that you told him you felt that she was being discriminated against because no other white male professor was facing the same salary challenges. Is that --
> A. Yeah.
> Q. -- is that fair to say?
> A. Yes. And I even -- yeah, I specifically said that she would have reason both under Title Seven, and I use those words, both under Title 7 and Title 9, to file a complaint. But I hope
> we could resolve this amicably, something along those lines, but I just -- I -- I did say that I felt she would have reason to file a complaint under Title 7.

(A-1140).

3

The District Court correctly observed that Appellant's complaint "would give Defendants reasonable notice that Plaintiff was attempting to report conduct prohibited by Title VII." (SA-71). The Court continues: "The remaining question is whether Plaintiff's belief that the salary reduction violated Title VII was a good faith, reasonable one." (SA-71-72). And, "[t]he Court finds that the undisputed evidence presented does not substantiate the reasonableness of that belief." (SA-72).

Appellant "need not establish that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute. Galdieri– Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir.1998) (internal quotation marks omitted)." Summa v. Hofstra Univ., 708 F.3d 115, 126 (2d Cir. 2013).

It defies credulity that Appellant would have made this report had he not had a good faith and reasonable belief that the underlying employment practice was unlawful:

> based on my understanding of the situation and facts, the Professor felt she may have a claim under Title VI (sic) and/or Title IX for discrimination since, to her knowledge, no white male professor was ever subjected to a salary reduction of this type. (A-0839). SUNY Upstate's President (formerly Interim President) offered no response to my report of potential discriminatory conduct on the part of Defendant but told me that he would get back to me. Less than a month after I opposed discrimination by reporting a female employee's potential discrimination claims on August 12, 2019, and less than a month since my actions to prevent discrimination in the

4

appointment of the Interim Chair of Anesthesiology on August 13, 2019, I was unlawfully and suddenly demoted on September 12, 2019, in the absence of any other intervening interactions with the Defendants. (A-0840).

As indicated, Appellant's statement is based on his "understanding of the situation and facts." (A-0840). While Appellant may or may not have been correct in his "understanding," that does not render it unreasonable or in bad faith.

In further support of the reasonableness of Appellant's understanding is that he "specifically discussed the structure of Dr. Wong's salary with President Laraque-Arena at the time of their recruitment to Upstate and subsequently while Dean at Upstate and specifically asked her on multiple occasion whether the ALR for Dr. Wong was time-limited and she said 'no, it [was] not time-limited.'" (A-0868).

Also, "President Laraque-Arena re-assured me that many other individuals at SUNY Upstate had ongoing ALRs as part of their salary structures. Neither Dr. Wong nor I were ever informed by anyone else while Dr. Laraque-Arena was President that that ALR was time limited." (A-0868).

In fact, Appellant's Chief of Staff, an individual with more than fifteen years' experience at SUNY Upstate, stated that "the funds for Dr. Wong's ALR came from a state appropriated (either 66 or 67 account) and if the ALR was reduced or cut, those funds would no longer come to the Department, and the overall budget of the Psychiatry Department would therefore be reduced." She continued, "that it was 'unheard of' for Chairs to ask that NY State funds stop coming to support a faculty

5

member in their departments. This strongly implied that Dr. Wong should not worry about having her ALR reduced or abolished because those funds would no [sic] revert to the Department of Psychiatry." (A-0868-0869).

It was therefore reasonable for Appellant to believe that Dr. Wong's "salary reduction violated Title VII." (SA-72): "In my opinion, Dr. Schwartz acting on behalf of Defendants, specifically chose to discriminate against Dr. Wong, reduce her income, and lose funds that were coming from the State to his Department to support Dr. Wong." (A-0869).

Viewing Appellant's activities in the context of the LCME audit, and in light of the 'totality of the circumstances,' it was reasonable for Appellant to believe that SUNY Upstate was engaging in conduct prohibited by Title VII.

## B. Appellee Could Reasonably Have Understood That the Appellant's Opposition was Directed at Conduct Prohibited by Title VII

As stated, SUNY Upstate had been on probation since 2011 for its failure to comply with diversity standards. (A-0824). The actions of Appellant did not happen in a vacuum. Rather, each of the enumerated efforts to address discrimination occurred in the context of Appellee's longstanding probation, a probation based on the very thing that Appellant's actions sought to remedy.

It is implausible that, in light of the LCME audit and Appellant's many complaints, Appellee would not have "understood, or could reasonably have

understood, that plaintiff's opposition was directed at conduct prohibited by Title VII." Id.

The District Court emphasizes that Appellant did not report alleged discrimination to the Office of Diversity and Inclusion ("ODI") or Human Resources ("HR"): "Plaintiff never made any complaints on behalf of Dr. Thompson to ODI or Human Resources." (SA-33-34). And, "[p]laintiff never made a report that anyone had discriminated against Dr. Chambers." (SA-35). Also, "[p]laintiff never made any complaints on behalf of Dr. Chambers to ODI or Human Resources that she was being discriminated against based on her race." (SA-35). Further, "Plaintiff alleges that he also reported 'national origin discrimination' to Defendants on behalf of 'numerous medical students enrolled with SUNY Upstate,' but he never filed any formal complaints with ODI or Human Resources on their behalf." (SA-35).

However, the 'opposition clause' of Title VII's §704(a) presents a much broader definition of 'opposition' than that which was applied by the District Court: "[i]n addition to protecting the filing of formal charges of discrimination, § 704(a)'s opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges. *See, Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir.1989)*, and Schlei &

Grossman, *Employment Discrimination Law,* 548-49 (1983)." <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir.1990).

 While Appellant might not have reported discrimination to ODI or HR, he, at the very least, made numerous and ongoing "informal protests of discriminatory employment practices" by way of "complaints to management," that is, to Dr. Dewan the Interim President and Appellee's superior.

 Finally, Appellees state that "Plaintiffs cannot cobble together many actions that do not meet those criteria and somehow satisfy the test of demonstrating a protected activity." (Appellee Br. p. 49). However, Appellees fail to cite to any case law or statute in support of this assertion. As discussed supra, §704(a)'s opposition clause allows for many forms of "protest." Surely, two-plus years of complaining to individuals in the highest and most prestigious positions at SUNY Upstate about the institution's discriminatory practices and policies rises to the level of "protest."

## II. The District Court Erred in Finding That There was a Legitimate Basis for Appellant's Demotion

 As set forth in the New York State Executive Division of Human Rights' (NYSDHR) preliminary finding, "[t]he lack of documentation, coupled with the short time frame between Complainant's claim that he opposed discrimination and the adverse employment action, raises material issues of fact." (A-0906). Prior to his demotion, Appellant had never received any written notice of

performance deficiencies, and in fact, one day prior to his unlawful demotion, he was honored as a Distinguished Professor at the SUNY Upstate Annual Convocation. Distinguished Professor is the highest honor awarded to professors within the entire SUNY system. (A-0825).

Further, "nor have I ever been accused of committing misconduct, either as defined by my employment contract or by any other definition or standard. At no point in my term as Dean were either performance deficiencies or any type of performance-related counselling ever brought up to me by Defendants." (A-0825). This "lack of documentation" was noted by the NYSDHR in its preliminary finding of probable cause. (A-0906).

Further, while Appellees allege ongoing issues relating to Appellant's performance, the NYSDHR correctly observed that "the investigation did not show any documented attempts to cure the alleged behavior that Complainant was exhibiting; this lack of documentation which would lead one to question whether his actions rose to the level of severity that would result in adverse employment action." (A-906).

Appellees further allege a "pattern of inappropriate and unprofessional conduct as well has his wasteful spending," yet remarkably, proffer no documentation in support thereof. (Appellee Br., p. 56).

Appellees conclude, "[i]n sum, it is undisputed that plaintiff consistently acted inappropriately and unprofessionally and failed to adequately perform in the role of Dean of the College of Medicine. Upstate thus had ample legitimate, non-discriminatory bases to remove plaintiff from his position as Dean and return him to a faculty position." (Appellee Br., p. 55.) Again, one must ask why these alleged performance or behavioral issues, in particular, allegations of wasteful spending, were never documented.

## III.    The District Court Erred in Finding that Appellant's Demotion Was Not Pretextual

In its discussion of whether there was a pretextual basis for Appellant's demotion, the District Court states that "[p]laintiff argues that there is a causal connection between his demotion and his alleged protected activity because (1) there is a close temporal proximity; (2) Human Resources Vice President Mr. Frost made a statement in his deposition testimony that could be construed as stating that he believed it was possible that Plaintiff's intent to promote diversity may have been part of the decision to demote him, although Mr. Frost also stated that 'I think it was a multitude of a lot of things'; (3) he was demoted without being provided notice or a transition period as required by the contract he signed when he accepted the position; (4) notes from a September 16, 2019 Council Meeting indicate that it was stated that 'there is not one horrible thing that happened for this change to occur, rather a change was needed in leadership,' and 'overall, this is not a

negative change, but rather a moving forward change and a removal of barriers'; and (5) he was not provided with any negative feedback related to his performance and there is no documentation of performance issues." (SA-78-79).

Taken in order, (1) Appellant's demotion in September 2019 took place only a few weeks after Appellant voiced his concerns about a lack of diversity at an August 2019 meeting with President Dewan. (A-1002; A-1003). However, Appellant is not relying on temporal proximity alone to prove causation.

(2), Appellee's Associate Vice President for Human Resources, Eric Frost, admitted that Appellant's efforts to counter a lack of diversity at Upstate could have been a but-for cause of Appellant's demotion: "I think it was a multitude of a lot of things. I think it could have been part of it." (A-1094).

Appellee alleges that Mr. Frost was not referring to "intent to improve diversity," but rather "plaintiff's inappropriate creation of management-level titles for union members and other improper personnel actions may have been a ground for his dismissal." (Appellee Br. p. 58). Appellee's opinion on, or own interpretation of, Mr. Frost's statement defies credulity as Appellant was never put on notice – and certainly not in writing – that his "improper personnel actions may have been a ground for his dismissal." Id. As correctly observed by the NYSDHR, "this lack of documentation which would lead one to question whether his actions rose to the level of severity that would result in adverse employment action." (A-906).

11

Further, a plain reading of the relevant deposition testimony makes it clear that Mr. Frost was referring to Appellant's intent to improve diversity:

> Q:    Now, was Dr. Licino promoting diversity efforts during him [sic] time as Dean?
>
> A.    I believe he did. He assigned -- that was part of what I referred to earlier -- where he gave what really amounted to as an M.C. of management confidential titles to faculty members. I think the intent was good.

(A-1092-1093).

The District Court stresses that the statement "it was a multitude of a lot of things" undermines Appellant's position that his efforts to address institutional discrimination was a but-for cause of his demotion: "[b]ecause Plaintiff must show that retaliation was **the** but-for cause of his demotion and not just a motivating factor, Mr. Frost's deposition statement does not add any weight to Plaintiff's argument." (SA-79) (emphasis added). However, as set forth in Appellant's principal brief, there can be more than one but-for cause of an adverse employment action. <u>Bostock v. Clayton Cnty., Georgia</u>, 590 U.S. 644, 656, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020). ("[t]his can be a sweeping standard. Often, events have multiple but-for causes."). The District Court does not address this key distinction, and incorrectly holds that the conduct must be **the** but-for cause, rather than **a** but-for cause.

Appellees argue that "[a]t most, Frost suggested that retaliation could have been 'a part of' the grounds for his demotion, not that it was a but-for cause of his demotion. As this Court has instructed, something can be a motivating factor in an employer's decision without it rising to the level of but-for causation." (Appellee Br. p. 58-59). While true, Appellees do not establish this as a matter of law, and it does not preclude "a part of" the grounds for Appellant's demotion from rising to the level of a but-for cause.

Further, Appellee's argument that Mr. Frost's statement was "speculative" is unavailing. (Appellee Br., p. 59). Appellees argue that "Frost did not decide to demote plaintiff; that decision belonged to Dr. Dewan." <u>Id</u>. However, Mr. Frost concedes that "[s]hortly before Plaintiff's demotion, in August 2019, President Dewan consulted me about his decision to remove Plaintiff from the Dean position." (A-0366). Mr. Frost had personal knowledge of Appellant's impending demotion and the bases for it.

(3) Regardless of whether Appellant's employment agreement was binding, Defendants completely disregarded the terms applying to a transition and notice period. (SA-80). Further, there is nothing in the record to establish that Defendants had knowledge of this at the time of Appellant's demotion and that this influenced their decision to demote Appellant without a transition and notice period.

The District Court does not address:

(4) Notes from a September 16, 2019, Council Meeting indicate that it was stated that 'there is not one horrible thing that happened for this change to occur, rather a change was needed in leadership,' and 'overall, this is not a negative change, but rather a moving forward change and a removal of barriers'. (A-0920). In short, Defendants concede that performance was not a contributing factor to Appellant's demotion.

And (5) he was not provided with any negative feedback related to his performance and there is no documentation of performance issues. (A-0825). Defendants do not dispute that during Appellan's tenure as Dean, he was not provided with any written notice of performance deficiencies.

## IV. Legal Standard on Motion for Summary Judgment

Summary judgment is only appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court must view all facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all inferences in its favor. Vogel v CA, Inc., 662 Fed Appx. 72, 75 (2d Cir 2016).

Here, Appellant raises multiple issues of material fact suitable for trial. As recognized by the NY State Executive Division of Human Rights: "there is very little documentation that would establish that his removal from his position as Dean resulted from Complainant's behaviors and/or actions, especially because there is

no record of prior discipline. There is also a dispute among the parties concerning Complainant's knowledge of Respondent's dissatisfaction. The lack of documentation, coupled with the short time frame between Complainant's claim that he opposed discrimination and the adverse employment action, raises material issues of fact that should be resolved at public hearing." (A-0906).

And, "[a]fter investigation, the Division has determined that it has jurisdiction in this matter and that <u>PROBABLE CAUSE</u> exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (A-0896) (emphasis added).

Consistent with the determination of the NYSDHR, this matter should proceed to trial, where Appellant will have an opportunity to cross-examine Defendants' witnesses. Instead, by granting summary judgment to Appellee's on all claims the District Court erroneously held that no reasonable jury could find that Appellant could satisfy his burden.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Second Circuit reverse the Northern District of New York's Order granting Defendants' Motion for Summary Judgment and remand this matter to the Northern District of New York.

Dated: New York, NY
March 24, 2025

/s/  Daniel Grace, Esq.

Daniel Grace
Danny Grace PLLC
225 Broadway, Suite 1200
New York, NY 10007

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [3,324] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*], *or*

[   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: March 24, 2025

/s/ Daniel Grace, Esq.

Counsel for Plaintiff-Appellant